ILLINOIS CENTRAL RAILROAD COMPANY *v.* THOMAS.

[68 South. 773.]

1. RAILROADS. *Fires. Question for jury. Presumption and burden of proof. Liability for injuries. Proximate cause. Comparative negligence. Action for injuries.*

Where immediately after the passing of a train, the grass on plaintiff's land adjoining the railroad company's right of way was discovered on fire and no fire had been seen in the vicinity before this time, it was a question for the jury as to whether or not the train had set out the fire.

2. RAILROADS. *Fires. Presumption and burden of proof.*
   If a fire was set out by a railroad train, and there was no evidence disclosing the facts and circumstances under which it was set out, negligence on the company's part will be presumed under Code 1906, section 1985, so providing.

3. RAILROADS. *Fires. Liability for injuries. Proximate cause.*
   In a suit against a railroad company for injuries sustained by plaintiff in fighting a fire set out by a railroad train, it was not necessary since the comparative negligence statute, that the company's negligence should have been the sole proximate cause of the injury.

4. RAILROADS. *Fires. Liability for injuries. Proximate cause.*
   Where fire was set out by a railroad train in grass on plaintiff's land adjoining the railroad company's right of way and was being blown towards plaintiff's property and plaintiff in fighting the fire was injured by the wind blowing the fire on him, the setting out of the fire was a proximate cause of his injury.

5. SAME.
   In such case the fact that plaintiff was negligent in the manner in which he attempted to extinguish the fire did not, under the concurrent negligence statute, exonerate the railroad company from liability.

6. RAILROADS. *Fires. Action from injuries. Instruction.*
   Where in an action for injuries, there was evidence that a fire in grass on plaintiff's land adjoining a railroad right of way was set out by a railroad train and that plaintiff to protect his property was fighting the fire, that the wind blew the fire upon him, blistering his face and nose, that he closed his eyes, and that his eyes would probably not have been burned, had he not run into a post as he was trying to get out of the fire, forcing him to open his eyes. In such case it was not error for the court to charge the jury for plaintiff, that if the fire was set out by sparks from a train and threatened the destruction of plaintiff's property, and if plaintiff, exercising due care and caution, undertook to extinguish it, and while fighting the fire and exercising reasonable care, the flames were blown in his face and he was burned and injured, defendant was liable for all injuries resulting on account of such burning, and that in estimating the damages the jury should consider not only his loss of time, but the pain and suffering endured by him, and also the damage to his eyesight if there was any such damage.

Appeal from the circuit court of Copiah county.

Hon. D. M. Miller, Judge.

Suit by J. J. Thomas against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The instruction referred to in the opinion of the court, and which was the only instruction given for the appellee, is as follows:

"The court instructs the jury, for the plaintiff, that if you believe from all the facts and circumstances offered in evidence in this case that the fire in question was set out by sparks negligently allowed to escape from defendant's train and locomotive, and that the fire so set out spread to and threatened the destruction of plaintiff's property, and that plaintiff, exercising due care and caution, undertook to extinguish the said fire in order to prevent it from destroying his own property, and that while fighting the fire, and exercising such care as a reasonably prudent man would have exercised under the circumstances, the flames were blown in his face, and he was burned and injured thereby, then the defendant is liable for all the injuries resulting to him on account of the said burning, and in estimating his damages you should take into consideration, not only his loss of time, but the pain and suffering endured by him, if any, and also what damage was done to his eyesight, if you believe from the evidence there was any such damage."

The following is the form in which counsel for appellant suggest the above instruction should have been given:

"The court instructs the jury, for the plaintiff, that if you believe, from all the facts and circumstances offered in evidence in this case, that the fire in question was set out by sparks negligently allowed to escape from defendant's train and locomotive, and that the fire so set out spread to and threatened the destruction

of plaintiff's property, and that plaintiff, exercising due care and caution, undertook to extinguish the said fire in order to prevent it from destroying his own property, and that while fighting the fire, and exercising such care as a reasonably prudent man would have exercised under the circumstances, the flames were blown against him and he was burned and injured on the nose, face, and hands, then the defendant is liable for all such injuries to his nose, face, and hands; and that if you further believe that, in attempting to get out of the reach of the flames, the plaintiff struck his head against a post, and that that caused him to open his eyes, and that the opening of his eyes caused him to get burned in the eyes, and you further believe from all the circumstances of the case that the defendant foresaw, or ought to have foreseen, that the burning of plaintiff's eyes would be the natural and reasonable result of the setting out of the fire, then the defendant is also liable for the injuries to plaintiff's eyes,'' etc.

*Mayes & Mayes,* for appellant.

It is as plain as day that the proximate cause of plaintiff's injury was his own independent act of going in to fight the fire, and that there is absolutely no liability upon the defendant.    65 Tex. 274; 70 S. W. 734 (Mo.)

The second reason why the peremptory instruction should have been granted for the defendant was because plaintiff did not adopt the usual and reasonable method of fighting this fire.    But on the contrary, he adopted a method so unusual and so exceedingly dangerous that it amounted to utter recklessness, and he adopted this method knowing the danger he was running and manifesting a willingness to assume the risk.

The next error of which we complain was the giving by the trial court of the first and only instruction for the plaintiff.    Our principal objection to this instruc-

tion is that it utterly ignores the incident of the plaintiff's bumping his head against the post, which he said caused him to open his eyes and receive burns in them.

Therefore, to come back to our starting point, we say that the injuries which were sustained by plaintiff were of two classes.[*] First, those to his nose, face and hands, which were the direct result of his running in to fight the fire; second, those to his eyes, which were the direct result of his bumping his head; and that as to these injuries of the first class, since the record shows no conflict in the testimony as to how these injuries to plaintiff's nose, face and hands were received, that the trial court had the right to instruct the jury, as a matter of law, what was or was not, the proximate cause of these injuries. (The court instructed the jury wrong on this, but, as a matter of law it did have the right to instruct). But as to the injuries of the second class, which were the injuries to the eyes, the record shows a sharp conflict in the testimony of plaintiff himself as to the exact cause of his getting burned in his eyes, therefore, as to the injuries of the second class, to wit: the injuries to plaintiff's eyes, the question of proximate cause must be left to the jury. 13 Am. & Eng. Ency. Law, 461.

When you come to consider this case in the light of all of the facts it is apparent that it simply would not be right nor just to permit a recovery by this plaintiff. Take the matter of the setting out of the fire. It is by no means satisfactorily proven that this fire was set out by the defendant. No one saw this locomotive emitting sparks. No one saw the fire when it first flared up. When the fire was first noticed it had made considerable progress and the train was still in sight. Now it is a matter of common knowledge that fire set out by sparks from a locomotive begins by smouldering for a long time before it actually springs into life.

But this plaintiff would have the court believe that this fire was kindled with the same alacrity as if a blazing torch had been thrust into the grass. But such a thing would be impossible. The very shortness of the interval of time between the passing of the train and the discovery of the fire, already in advanced stages, proves conclusively that its origin could not have been due to sparks from the locomotive. There was not sufficient time.

There comes the intervening independent act of the plaintiff in going in to fight the fire. Even if we admit for the sake of the argument that the defendant did negligently set out this fire, it could never be said that the defendant foresaw, or ought to have seen, that as a natural result of the setting out of the fire, the plaintiff would go out to extinguish it; or, if the defendant could have foreseen that the plaintiff would go out to extinguish the fire, certainly it could not be said that the defendant could foresee that this able bodied, vigorous man, who was able to move from place to place with agility, would so handle himself as to get hurt in the effort to extinguish the flames. The injury to the plaintiff was such a remote result of the setting out of the fire that it shocks every sense of justice to hold the defendant accountable for it.

Then comes the foolhardiness of the plaintiff in adopting his own peculiar style of fighting this fire and the utter abandonment of himself to these dangers. Common sense, or animal instinct, would teach even a child that the only reasonable way to fight fire is to approach the flame from the windward; but here this plaintiff says himself that he took up his stand in front of the fire, or to the windward of it, and directly in the usual course of the wind; that as the wind would change and momentarily blow the flame away from him, he would rush in and strike the flames a few blows with his pine-top, counting on being able

to rush out again before the wind changed back to its usual course. This recklessness would prevent plaintiff from recovering in any case, regardless of the other facts. His method of fighting fire shows that the plaintiff knew of the danger which he was running and that he voluntarily took the risk. Plaintiff knew that, if, when he had rushed in to beat the flame, he was not successful in rushing out again before the wind changed, he would be caught and burned. This plaintiff staked his safety on a whisk of wind. What could be more foolhardy than for a man to stake his safety on such an uncertain thing? The defendant would not be the insurer of plaintiff's safety even were the plaintiff acting with ordinary precaution. Certainly the defendant is not to be held the insurer of plaintiff's safety when plaintiff is gambling against such overpowering odds and staking his life and safety on a mere whisk of the wind.

*H. J. Wilson,* for appellee.

We shall, confine ourselves to the argument of the question of whether or not the negligent act of the Railroad Company in setting out the fire was the proximate cause of the injury.

The appellant's contention is supported by the case of *Seale* v. *Gulf Etc. Railroad Company,* 65 Texas, 274. In that case fire was set out on Mrs. Seale's premises by the negligence of the Railroad Company. She undertook to put out the fire and while so doing, her clothes caught on fire and she was burned, resulting in her death. The court held that whether the decedent was negligent or not in her attempt to put out the fire, it was this attempt, and not the original negligence of the defendant in starting the flames, that was the proximate cause of her death. This case was afterwards followed by the Missouri court of appeals in the case of *Logan* v. *Wabash Railroad Company,* 96 Mo. App.

461. We find no other authorities supporting appellant's contention.

These cases, I contend are wrong in principle and opposed to the weight of authority. Appellee was undertaking to extinguish a fire which was threatening the destruction of his own property. Even though the fire was set out by the negligence of the Railroad Company, he was not warranted in standing by and seeing his own property consumed by the fire. It was his duty to extinguish the fire if he could do so by the exercise of reasonable care. Whether or not he was foolhardy in undertaking to extinguish the fire in the manner that he did was a fact for the determination of the jury after hearing all of the evidence, and taking into consideration the circumstances under which the appellee was placed at the time the injury occurred.

The great weight of authority in the well-considered cases is opposed to appellant's contention in this case. With the exception of the two cases cited, we fail to find any other state in the Union holding views contrary to our contention in this case.

In the very well-considered case of *Lining* v. *Illinois Central Railroad Co.*, 81 Iowa, 246, it is held as follows: "The defendant's engine having set fire to grass and weeds upon defendant's right-of-way opposite the premises of one Ortman, with whom the plaintiff resided, the plaintiff and Ortman sought to extinguish the flames, but were unsuccessful and a high wind having carried the fire towards Ortman's barn, which contained some horses belonging to the latter, the plaintiff entered the barn to save the horses, but before returning therefrom, the fire had encompassed the doorway of the barn and the plaintiff in making his escape therefrom was badly burned, and his health and sight seriously impaired. Held upon demurrer to plaintiff's petition, which alleged the above facts, and further that the fire was caused by defendant's negligence, and plaintiff was

free from negligence, that the negligence of the defendant was proximate cause of the injury to plaintiff.''

In an elaborate and well-considered investigation of this same question, the supreme court of the state of Illinois, in the case of *Illinois Central Railroad Co.* v. *Silver,* 229 Ill. 390, holds in a case similar to that at Bar, that the setting out of the fire is proximate cause of the injury. We quote the exact language, which is as follows: ''What is the proximate cause of an injury is ordinarily a question of fact to be determined by the jury from a consideration of all attending circumstances. *Fent* v. *Toledo Etc. R. Co.,* 59 Ill. 349; *Pullman Palace Car Co.* v. *Lack,* 143 Ill. 242, 32 N. E. 284.; *Western Chicago St. R. Co.* v. *Feldstein,* 169 Ill. 139. . . .

''The rule as to what constitutes proximate cause was considered in the case of *Atchison Etc. R. Co.* v. *Stanford,* 12 Kan. 344, and it was said any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence, and if they are such as might with reasonable diligence have been foreseen, the last result, as well as the first, and every intermediate result is to be considered in law as the proximate result of the first wrong cause. But, whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequence could not have happened, then such injurious consequences must be deemed too remote to constitute the basis of the cause of action. In *Milwaukee Etc. R. Co.* v. *Kellogg,* 94 U. S. 469, it is said: The question always is, was there an unbroken connection between the wrongful act and the injury— a continuous operation? Did the facts constitute a continuous succession of events so linked together as

to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? . . . The inquiry must, therefore, always be whether there was another intermediate cause disconnected from the primary fault and self-operating which produced the injury.''

''It is true that in this case the voluntary act of the decedent intervenes between the negligent act of the appellant in setting out the. fire, and the injury occasioned by the burning of decedent. But this act was one of the intervening causes which the appellant, with reasonable diligence, might have foreseen. It was a consequence of the wrongful act of appellant which it ought to have anticipated. It was not a new and independent cause intervening between the wrong and the injury or disconnected from the primary cause and self operating, but was itself the natural result of appellant's original negligence . . . One whose property is exposed to danger by another's negligence is bound to make such effort as an ordinarily prudent person would, to save it, or prevent damages to it. If in so doing, and while exercising such care for his safety as is reasonable and prudent, under the circumstances, he is injured as a result of the negligence against the effect of which he is seeking to protect his property, the wrongdoer, whose negligence is the occasion of the injury, must respond for the damages. It is not just that the loss should fall on the innocent victim. We regard this as result of the authorities which we have been able to examine, aside from the two above mentioned as sustaining the position of appellant. *Berge* v. *Great Northern R. R. Co.*, 70 Minn. 272; *Liming* v. *I. C. R. R. Co.*, 81 Iowa, 246; *Glanz* v. *Chicago, etc., R. R. Co.*, 119 Iowa, 611; *Wasmer* v. *Deleware, Etc. R. R. Co.*, 80 N. Y. 212; *Page* v. *Bucksport*, 64 Me. 51.''

Whether appellee acted with due care and prudence in undertaking to extinguish the fire is a question of

fact entirely to be determined by the jury under proper instructions from the court. The exact language of the instruction on this point was: "And that plaintiff, exercising due care and caution, undertook to extinguish the said fire in order to prevent it from destroying his own property, and that while fighting the fire, and exercising such care as a reasonably prudent man would have exercised under the circumstances."

The verdict of the jury was equivalent to saying that after listening to all of the testimony in the case, and being acquainted with the circumstances surrounding the defendant at the time the injury occurred, they were satisfied that he exercised such care as a reasonably prudent man would have exercised under the circumstances. The question was fairly presented to the jury. The degree of care required of the plaintiff was specificially stated to them. It was only that care that an ordinary prudent man under the circumstances would exercise. The jury is presumed to know the best, most effective and safest method of fighting fires of the nature of the one in controversy. They are perhaps better qualified to pass on this question from their own personal knowledge than the judge on the bench or the lawyers at the bar, and having passed on it, I take it this court will accept their verdict and not disturb it.

Taking the record as a whole, I submit that the plaintiff was entitled to damages and the amount allowed by the court was reasonable.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment rendered in the court below for damages sustained by appellee while endeavoring to extinguish a fire alleged to, and found by the jury to, have been set out by one of appellant's trains. Appellee was the owner of a small tract of land adjoining appellant's right of way on which was situated two brick kilns, several dry sheds, and an

office building, all of which was his (appellee's) property. The land north of these dry sheds adjoining appellant's right of way was covered with tall, dry grass. No grass seems to have been on the right of way. On the afternoon of March 2, 1912, immediately after the passing of one of appellant's southbound passenger trains, this grass was discovered by several parties working in that vicinity to be on fire at the junction of the right of way with the abutting property and was being blown by a high wind toward these dry sheds. No fire was seen in that vicinity prior to the passing of this train. Appellee was immediately notified, and, together with several other persons, he immediately began trying to beat out the fire with pine tops, wet cloths, etc.

It seems that appellee and his assistants failed to extinguish the fire before it reached the dry sheds by fighting it from the rear, his testimony on that point being as follows:

"A. I fought the fire in the hollow towards the railroad until I saw there would be no chance to whip it out there, and I went around and got under the shed, with the idea that when it burned up and died down, or the wind would blow it back, I could run in there and fight it, and I did so. As the current of air carried the flames in front of me, I run in at that time and commenced fighting, and the wind blew the fire on me, and in trying to get out, I struck a post in the ditch, and I was blinded, and the flame come on me again, and I run under the shed. Q. State what damage, if any, was done. A. My eyes were burned, and this side of my face and nose."

Another portion of his testimony indicates that when the flame was blown into his face he closed his eyes, and while his face and nose were blistered thereby, his eyes would probably not have been burned had he not been forced to open them when he struck the post.

His injuries incapacitated him to some extent in attending to his business for about two weeks, during which time he suffered some pain.

With reference to the injury to his eyes, his testimony was as follows:

"A. Well, my eyes are, to some extent, inflamed yet, because an ordinary light hurts them, and wherever I look—it doesn't matter what it is—there is a blurred spot before my eyes, which hinders me from seeing; and I'm all the time trying to place my eyes to get to see better, but it doesn't do any good. It's merely a sensation to want to see better, and I am trying to see better. Q. Were your eyes that way before this fire? A. No, sir."

The two assignments of error argued are: First, that the court below erred in not granting appellant a peremptory instruction; and, second, that the court erred in granting the one instruction granted appellee. It is sought to uphold the first assignment of error upon two grounds first, there is no evidence from which the jury could infer that the fire was set out by appellant's train, and second, that the setting out of the fire was not the proximate cause of appellee's injury.

On the evidence we think the question of whether or not the fire was set out by this train was for the jury, and if it was set out by this train, then under section 1985 of the Code, negligence on appellant's part in this connection must be presumed, there being no evidence disclosing the facts and circumstances under which the fire was in fact set out.

It is not necessary that appellant's negligence should have been the sole proximate cause of appellee's injury in order that it may be liable for damages resulting therefrom, and if authority be desired for the holding that the setting out of the fire was a proximate cause of appellee's injury, it can be found in *Railroad Co.* v. *Siler,* 229 Ill. 390, 82 N. E. 362, 15

L. R. A. (N. S.) 819, 11 Ann. Cas. 368; *Liming* v. *Railroad Co.*, 81 Iowa, 246, 47 N. W. 66; *Telephone Co.* v. *Woodham,* 99 Miss. 318, 54 So. 890; and *Railroad Co.* v. *Smith,* 103 Miss. 150, 60 So. 73. But it is said by counsel for appellant that not only was appellee's injury caused by his own voluntary act in attempting to extinguish the fire, but that in so doing he "did not adopt the usual and reasonable method of fighting this fire. But, on the contrary, he adopted a method so unusual and so exceedingly dangerous that it amounted to utter recklessness, and he adopted this method knowing the danger he was running and manifesting a willingness to assume the risk."

Conceding, but solely for the purpose of the argument, that appellee was guilty of negligence in the manner in which he attempted to extinguish the fire, appellant is not, under our concurrent negligence statute, exonerated from all liability by reason thereof.

No error was committed in granting appellee's instruction. This instruction together with the form in which counsel for appellant in their brief suggest that it should have been given, will be set out by the reporter.