222 So.2d 131 (1969)
The TRAVELERS INDEMNITY COMPANY
v.
James L. RAWSON and Mrs. Jan Rawson.
No. 45322.
Supreme Court of Mississippi.
April 14, 1969.
*132 Wilbourn, Williams & Glover, Meridian, for appellant.
Goldman, Self & Goldman, Pigford & Hendricks, Meridian, for appellees.
BRADY, Justice:
This is an appeal from a judgment of the Circuit Court of Lauderdale County affirming a judgment of the county court in favor of appellees in the sum of $1253 for wind and rain damage to their home.
The controlling facts in this cause are as follows. On April 20, 1961, a wind and rain storm policy of insurance was obtained by the appellees from the appellant, The Travelers Indemnity Company of Hartford, Connecticut. Appellees' declaration alleged that on or about January 15, 1965, during an interval of high winds and stormy weather, the roofing on appellees' residence, which was insured, was blown up or disturbed and that water flowed into their house because of said wind damage to the roof, damaging the walls, ceilings and floors of the living room, back bedroom, kitchen and bathroom, in the sum of $1485.60. An order requiring a bill of particulars was granted, and the time the damage occurred from the windstorm was fixed by the appellees at shortly after lunch time on January 15, 1965. Among other specifications, the bill of particulars set out that the shingles on the entire back part of the roof were blown up and twisted away from the felting. The cost of all repairs occasioned because the water had entered into the cracks between sheeting over several areas of the back of the house was itemized.
*133 The controlling provision of the contract of insurance entered into between the parties to this suit is as follows:
This Company shall not be liable for loss to the interior of the building or the property covered therein caused, (a) by rain, snow, sand or dust, whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then shall be liable for loss to the interior of the building or the property covered therein as may be caused by rain, snow, sand or dust entering the building through openings in the roof or walls made by direct action of wind or hail * * *. (Emphasis added.)
Proof offered by appellee James L. Rawson was that the wind was of sufficient violence to cause the shingles on the roof of appellees' home to stand up and that when he inspected the roof the following day subsequent to the termination of the wind and rain, the shingles were still standing up. Appellee Mrs. Jan Rawson testified that during the wind and rain storm the house leaked and water came down the walls and onto the floor of the house. Mr. Ray Joiner, who is and has been a contractor for many years engaged in constructing houses and who has built houses in the vicinity of appellees' home, testified that he was requested to come into the vicinity of appellees' home by another person and that during the wind and rain storm he was there examining not only appellees' home but other homes which he had constructed and, from the record, apparently in which he had a monetary interest. He testified that the wind was terrific, that he could see that the shingles were standing up, having been blown into that position, and that because of the severity of the wind and the rain, the water was driven under the shingles and entered between the cracks of the plywood which formed a part of the roofing. On cross-examination Mr. Joiner prepared an estimate relating to the work which would have to be done to repair the roof, the cost thereof being in the sum of $694.25. The total cost of repairing all damage occasioned to the house of appellees, as testified to by this witness, was $1485.
The record discloses that Mr. Joiner, who constructed the Rawsons' house, was requested by appellee James L. Rawson to inspect his house and that approximately two days subsequent to the wind and rain storm he did so and found the damages present to which he testified. He examined the house also a day or so before the trial and reached the conclusion that it would require the expenditure of $1485 to rectify all damages he found at that time. The proof is conclusive that no steps were taken by appellees to prevent future damages from rain or the elements to the exterior or interior of the property, the substance of which proof is that the appellees permitted the house to remain in the same condition it was immediately subsequent to the wind and rain storm and that there was further deterioration because of the appellees' failure to rectify the damage.
Mrs. Rawson and a neighbor, Mrs. Dillard, testified that on this blustery, winter day they were parked immediately behind the Rawson house, sitting in the car and drinking a coca-cola, and observed the shingles of the roof blowing up in the wind.
This testimony is strongly controverted by appellant's witnesses, particularly Mr. Gray, a meteorologist employed by the United States Weather Bureau, stationed at Key Field in Meridian. He filed as an exhibit to his testimony the local climatological data report. He testified that on January 15, 1965, there was .21 inch of rain. In minute detail he outlined from the hour of midnight to 1:00 A.M. and from then on, the exact amount of rain in one hundredths inches which fell at Key Field. He also testified that shortly after lunch at 12:58 on January 15, 1965, there was a wind of seven miles per hour and that this was the highest wind velocity which was recorded at Key Field on that date.
*134 The appellant utilized the expert services of witnesses Robert W. Frazier and J.D. Tucker. Mr. Frazier, who was a salesman for Kimbrell-Ruffer Lumber Company, went upon the roof of appellees' home and found that the roof was improperly constructed and that it lacked pitch, but he failed to find any holes in any of the shingles or any holes in the roofing. He also found the flashing to be intact. J.D. Tucker, who was salesman for a building and supply company, also went upon the roof of appellees' home and found the roof to be of a low pitch. He found the shingles to have an attitude of looseness, but failed to find any physical damage to the roof.
Mrs. Patricia Fairchild testified there was one home between her home and appellees' home, that there was no damage done to her home by any wind, and that she knew of no damage which was done to the house between her home and the Rawson home. Photographs were introduced in support of the testimony of Mrs. Fairchild to show the general neighborhood and to show that the roofs of the houses were intact.
Based upon the proof as set out above, the jury returned a verdict in favor of the appellees in the sum of $1253, and a motion by appellant for a new trial was overruled. Nineteen assignments of error are urged by the appellant; however, some of these were combined by the appellant into seven questions, some of which merit consideration in this opinion.
Appellant devotes a considerable portion of his brief to the error assigned that the verdict of the jury was contrary to the overwhelming weight of the believable evidence. This Court is not in a position to evaluate or weigh the truth or falsity of the witnesses who testified for appellant and appellees as is the jury, and we have so held many times. The demeanor or bearing, the tone of voice, the attitude and appearance of the witnesses, all are primarily for inspection and review by the jury. The jury not only has the right and duty to determine the truth or falsity of the witnesses, but also has the right to evaluate and determine what portions of the testimony of any witness it will accept or reject; therefore, unless it is clear to this Court that the verdict is contrary to the overwhelming weight of the credible testimony, this Court will not set aside the verdict of a jury.
Involved in appellant's contention is the fact that the wind did not actually blow holes through the roof of appellees' home. This narrow construction of the conditions of the contract, if followed, would mean that unless the wind was of such tornadic force as to drive or tear sizable holes in the roof, the insurer would never be liable. We think the evidence, accepted by the jury as accurate, is sufficient to show that the roof sustained actual damage from the wind and that the rain driven by the wind went through openings in the roof made by the direct action of the wind; and therefore, the jury was justified in concluding that under the contract of insurance appellant was responsible to appellees for damages sustained in the wind and rain storm.
The identical reasons urged for error No. 1 apply to error No. 2; and under the evidence presented, the court did not err in failing to direct a verdict for appellant or in failing to grant appellant's request for a peremptory instruction. We think that the testimony of the appellees together with the testimony of Mr. Joiner, when believed by the jury, is sufficient to establish that because of the direct action of the wind, the roof sustained damages and that because of the direct action of the wind and rain water entered through openings in the roof and into the interior of the house. The holes were not "so deep as a well, nor so wide as a church-door; but 'tis enough" to permit the driving rain to enter the house through the openings in the roof.
Conceding that a bill of particulars was properly granted by the county court, *135 we do not feel that a third error assigned, namely, that the court erred in admitting certain evidence over objections of the defendant, constitutes grounds for reversal of this cause. It should be remembered that the declaration alleges that on or about January 15, 1965, the alleged wind and rain storm and damages resulting therefrom took place. The appellant insisted that on or about January 15 is vague, uncertain and indefinite; and in compliance with the order for a bill of particulars, the appellees designated January 15 as the date and fixed the hour at a little after noon. Mr. Ray Joiner, one of the witnesses for the appellees, refused to categorically say that the windstorm occurred on January 15, 1965. He did testify, however that he was there during the windstorm, that he saw the damage being done to appellees' home and the other houses, and furthermore within two days or within a short period of time the appellant was notified by appellees of the rain storm and damage. It can scarcely be held that the appellant was taken by surprise so that any undue advantage was obtained by permitting Mr. Joiner or other witnesses who testified for appellees to designate the date of the windstorm as being a day before or after or on January 15 because they could not truthfully state that it actually occurred on January 15. We find that the appellant was not taken by surprise, prejudiced, or confronted with testimony by witnesses which he could not have reasonably anticipated under the declaration filed by the appellees or the bill of particulars.
The fourth error assigned, which is that the court erred in refusing the appellant's instruction requiring the appellees to minimize their damages, is well taken. It reads as follows:
The Court instructs the jury that even if you should believe from a preponderance of the evidence in this case that the roof of the residence of the plaintiffs was actually damaged by the direct force of wind on January 15, 1965, the court tells you now that it was the duty of the plaintiffs to reduce or mitigate their damages if any, by using reasonable diligence to have same promptly remedied or repaired and that the plaintiffs could not wait and permit rain to enter the residence through openings in the roof for a period of two years and thereby suffer further damage to the inside of the residence and now hold the defendants responsible for such further damage; and if you believe that the plaintiffs failed to exercise reasonable diligence to mitigate or reduce said damages, if any, then the plaintiffs are not entitled to recover any damages to the residence which would not have been sustained had the plaintiffs promptly remedied or repaired the roof.
We think that the record is clear that for a period of two years subsequent to the date of the wind and rain damage the appellees let their house remain as it was and that there were additional damages caused by rain entering the house and further damaging the exterior and interior thereof. The appellees had a duty within a reasonable length of time after such original damage to remedy the faulty situation and prevent the subsequent damage. Pelican Trucking Co. v. Rossetti, 251 Miss. 37, 167 So.2d 924 (1964), sugg. of error overruled in part and sustained in part 170 So.2d 573 (1965); National Dairy Prod. Corp. v. Jumper, 241 Miss. 339, 130 So.2d 922 (1961); Yazoo & Miss. V.R.R. v. Fields, 188 Miss. 725, 195 So. 489, sugg. of error overruled 196 So. 503 (1940); 22 Am.Jur.2d Damages § 43 (1965). Mr. Joiner testified that "the roof, the way it is now, cannot be repaired," indicating that there has been considerable damage occasioned by appellees' delay. The refusal of the court to submit to the jury this issue of avoidable consequences and damages is error and the jury should have been permitted to consider this issue.
*136 The fifth error assigned is that the court erred in granting the following instruction:
The Court instructs the jury for the plaintiffs that if you believe from a preponderance of the evidence in this case that on or about January 15, 1965, the wind caused the roof and roofing shingles on the residence of the plaintiffs at 5346 8th St., Meridian, Mississippi to be blown up and damaged and you further believe from a preponderance of the evidence that the rain soaked through said roof and into the said residence of the plaintiffs and ran down the walls and onto the ceilings and the floors and other parts of the said residence, if any, as shown by a preponderance of the evidence, then it is your sworn duty to return a verdict for the plaintiffs against the defendant. (Emphasis added.)
While a strict interpretation of this instruction seems to permit recovery if rain soaked through said roof, regardless of whether it is the result of direct action of wind, nevertheless when the latter part of this instruction is considered together with the first part of the instruction, the soaking through the roof is dependent upon whether or not the wind caused the roof and roofing shingles on the residence to be blown up and damaged. The inference is that resulting from the damage by wind to the roof and roofing the rain was able to penetrate or soak through said roof into the residence and down the walls. By a literal interpretation of this instruction it can be said to be in conflict with the instruction granted the appellant which is as follows:
The Court instructed the jury that before the plaintiffs are entitled to recover anything for damage to the interior of the residence, they must prove by a preponderance of the evidence that the house insured by the defendant had first sustained an actual damage to the roof by the direct force of wind and second, that the interior of said house was damaged by rain entering the house through openings in the roof made by the direct action of said wind. (Emphasis added.)
The appellant urges that the court erred in granting the following instruction to appellees:
The Court instructs the jury for the plaintiffs that if you decide from a preponderance of the evidence in this case that the plaintiffs are entitled to a verdict in this case, the measure of damages which you will use as to the amount of the verdict, if any, is the reasonable cost of repairing the damaged parts of the residence if any, as shown by a preponderance of the evidence; that is to say, you should return a verdict in a certain sum of money, measuring the damages, if any, as shown by a preponderance of the evidence to be the reasonable cost of the repairs of any damaged parts of the residence, if any, as shown by a preponderance of the evidence.
Among other reasons, this instruction is incorrect because it allows the appellees to recover for damages which have occurred subsequent to the date of the alleged loss and over a period of two years and not within a reasonable time in which to repair and prevent the additional damages.
It is with some reluctance that we consider the last error assigned by appellant, namely, that the comments made during the trial of this cause by the trial judge were prejudicial to appellant's case, because, just as appellant states, we do not believe that the statements which were made were made intentionally to influence or prejudice the jury. However, the comments of the trial judge related to material issues of fact in this case and could have been prejudicial to the rights of the appellant. Young v. Anderson, 249 Miss. 539, 163 So.2d 253 (1964); Sivley v. Sivley, 96 Miss. 137, 51 So. 457 (1909). It is *137 the duty of all trial judges to be comparable to Caesar's wife  above suspicion  and it is encumbent upon them to maintain a position of impeccable impartiality, and where the jury could have been misled, as in the case at bar, by the statements though inadvertently made by a trial judge, this Court has no alternative but to remand the case for a new trial.
On a retrial of this case the instruction granted the appellees with reference to rain that soaked through the roof can be more carefully drawn so as to require that the rain that soaked through the roof be through openings in the roof made by the direct action of the wind, and so as not to conflict with any other instruction which has been properly granted. Rawlings v. Inglebritzen, 211 Miss. 760, 52 So.2d 630 (1951).
Reversed and remanded.
ETHRIDGE, C.J., and RODGERS, PATTERSON and SMITH, JJ., concur.